IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

STEPHEN CURTISS,

       Plaintiff,

v.

CHARLES PALMER, BOB STOUT,
AND JASON SMITH

       Defendants.

No. 12-CV-4035-DEO

COMBINED RULING ON
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

_____

Presently before the Court are Plaintiff's Motion for Preliminary Injunction, Docket No. 29, and Defendants' Motion for Summary Judgment, Docket No. 31. This matter has long been before the Court. The parties appeared for several hearings on this matter, most recently on May 9, 2013. After the hearing, the Court directed the parties to file periodic status reports. After considering the parties' arguments, the briefs, the status reports, and the progress of Mr. Curtiss' case in the Iowa state courts, the Court now enters the following.

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Stephen Curtiss [hereinafter Mr. Curtiss], is an involuntarily committed patient at the Civil Commitment Unit for Sex Offenders [hereinafter CCUSO] located in Cherokee, Iowa.[1] On April 6, 2012, Mr. Curtiss filed a Pro Se Complaint requesting leave to proceed in forma pauperis and to have counsel appointed. On June 14, 2012, the Court filed an Initial Review Order allowing Mr. Curtiss to proceed in forma pauperis and appointing Pamela Wingert as Plaintiff's counsel. On August 12, 2012, the Defendants filed a Motion to Dismiss. Docket No. 18. The Court stayed ruling on the Defendants' Motion to Dismiss Mr. Curtiss' claim for injunctive relief, and denied the Defendants' other arguments. Docket No. 24. The Defendants filed an Answer on November 13, 2012. Docket No. 25. Shortly there after, the Plaintiff filed a new Motion for Preliminary Injunction. Docket No. 29. The Defendants

---

[1] CCUSO is not a prison facility; it "provides a secure, long term, and highly structured environment for the treatment of sexually violent predators." Iowa Department of Human Services Offer #401-HHS-014:CCUSO, http://www.dhs.state.ia.us/docs/11w-401-HHS-014-CCUSO.pdf, last visited February 13, 2015. The patients at CCUSO "have served their prison terms but in a separate civil trial have been found likely to commit further violent sexual offenses." Id.

filed a Motion for Summary Judgment on February 1, 2013.
Docket No. 31. On March 18, 2013, the Court entered an Order
denying the remaining issue from the Defendants' Motion to
Dismiss. Docket No. 42. The Court held hearings on March 21,
2013, April 4, 2013, and May 9, 2013, on this matter. During
the course of those proceedings, the Court noted that it would
withhold ruling for an indefinite period in light of the State
Court proceedings and directed the parties to file periodic
status reports.

## II. FACTUAL BACKGROUND

Mr. Curtiss' background has been set out by the Iowa
Court of Appeals:

> [i]n 1985 Stephen Curtiss was imprisoned
> for a conviction of sexual abuse in the
> third degree for molesting the
> four-year-old son of a woman he was dating.
> He was released in 1989. Three to four
> months after his release, Curtiss was
> imprisoned again for a conviction of sexual
> abuse in the third degree and indecent
> contact for molesting the five or
> six-year-old son of his new girlfriend. He
> was released in 1995. In 1997 Curtiss was
> again convicted of sexual abuse in the
> third degree, as well as two counts of
> lascivious acts with a child, when he
> molested an eleven-year-old neighbor boy.
> He was imprisoned for those convictions and
> released in 2007. Curtiss was forty-five
> years old at the time of the most recent

> incident. In 2007, while he was still
> incarcerated, the State petitioned to have
> Curtiss adjudicated a sexually violent
> predator subject to civil commitment. See
> Iowa Code§ 229A (2007). Following a bench
> trial, the district court determined
> Curtiss was a sexually violent predator
> under section 229A.2(11) and committed him
> to the custody of the Iowa Department of
> Human Services (DHS).

In re Det. of Curtiss, 773 N.W.2d 562 at 1 (Table) (Iowa Ct. App. 2009).

Since being committed to CCUSO, Mr. Curtiss has filed several federal lawsuits. In 09-CV-4015-DEO, Mr. Curtiss alleged constitutionally deficient medical treatment because a CCUSO staff nurse treated his medical issue rather than CCUSO staff doctor. The Court dismissed Mr. Curtiss' case at the initial review stage. 09-CV-4015-DEO, Docket No. 6. In 12-CV-4088-DEO, Mr. Curtiss filed a 42 U.S.C. Section 1983 lawsuit requesting that the Court initiate criminal charges against CCUSO employees. The Court dismissed Mr. Curtiss' case at the initial review stage. 12-CV-4088-DEO, Docket No. 2. In 14-CV-4021-DEO, Mr. Curtiss requested restraining orders against other CCUSO patients. The Court dismissed that case at the initial review stage. 14-CV-4021-DEO, Docket No. 2. Besides the above captioned matter, Mr. Curtiss has one

remaining case currently progressing before this Court. In 12-CV-4047-DEO, Mr. Curtiss claims CCUSO Defendants are being deliberately indifferent by refusing to provide Mr. Curtiss dentures. The Court allowed the case to proceed, and the Defendants ultimately filed a Motion for Summary Judgment, which this Court denied. The Defendants appealed the case to the 8th Circuit Court of Appeals, who reversed this Court and dismissed most of Mr. Curtiss' claims. However, the 8th Circuit allowed one claim, Mr. Curtiss' request for injunctive relief, to continue, and that case is currently set for trial later this year. See 12-CV-4047-DEO, Docket No. 50, for an overview of the case.

The above captioned cases arises pursuant to Mr. Curtiss' actual confinement to CCUSO. Pursuant to I.C.A. Section 229A, those confined as predators at CCUSO are given an annual review hearing where the State carries the burden of proving that they should remain confined. In September 2010, Mr. Curtiss' confinement was reviewed by the Iowa District Court. On January 17, 2011, Judge William Pattinson of Iowa's 2nd Judicial District entered an Order stating that, "Because the State of Iowa did not meet its burden of proof as per Iowa

Code Section 229A.8(6)(d)(1), Mr. Curtiss must be discharged from his Chapter 229A civil commitment." The Court went on to say that it was personally conflicted about allowing Mr. Curtiss to be release at all but that "my personal angst over this decision was assuaged, somewhat, by the options given to me by Iowa Code Section 229A.9A. Specifically, Section 229A.9A authorizes me to release Mr. Curtiss solely under a supervised basis if I find that it would be in the communities['] best interest to do so. And I do so find." Docket No. 30, Att. No. 2, p. 14. The Iowa Court went on to say that within thirty days, the Department of Human Services should prepare a release plan that addresses the issues related to Mr. Curtiss' transfer to Home for New Life, a residential facility in Omaha, Nebraska. The Court concluded by saying that a hearing on the release plan should be held on March 7, 2011.

The State did not immediately comply with that Order, but filed with the Court a Motion to Enlarge and Amend Judgment Entry arguing that the District Court's Order was in error. (This was the State's appropriate method of redress under Iowa Rule of Civil Procedure 1.904(2).) Specifically, the State

argued that under the Iowa Code, sexually violent predators could only be put into transitional release in certain Iowa facilities. While that matter was pending, Mr. Curtiss filed the present action in Federal Court arguing that the State was ignoring the Iowa District Court Order saying he should be put into in transitional release in Nebraska.

On February 17, 2012, Judge Dale Ruigh of Iowa's 2nd Judicial District ruled on the State's Motion to Enlarge and Amend Judgment. The State Court stated that "the Court has some doubt as to whether the [Nebraska facility] would qualify as an 'agency with jurisdiction'" under I.C.A. 229A.2(1). The Court went on to say that I.C.A. 229A.9A "provides authority for the Court's designation of an 'agency with jurisdiction' to supervise a person's release and to initiate legal proceedings regarding alleged violations of a release plan." The State Court concluded that the earlier Order was inappropriate and that "Judge Pattinson's order should be amended or modified to provide a disposition consistent with the provisions of Section 229A.9A. The designation of [the Nebraska facility] should be stricken..." Docket No. 30, Att.

No. 2, p. 29-30.   In substitute, the Iowa District Court
stated that:

> [Mr. Curtiss] shall be released with
> supervision pursuant to Iowa Code Section
> 229A.A(1), following approval of a release
> plan...   Within 30 days of the date of
> filing of this order, the Iowa Department
> of Human Services shall prepare and file
> with the Court a release plan addressing
> the matters described in Iowa Code section
> 229A.9A(2).

Docket No. 30, Att. No. 2, p. 29-30.

On April 11, 2012, the State filed a release plan
pursuant to the Iowa District Court's Order.   The release plan
is detailed, but broadly speaking, it states that Mr. Curtiss
should move into the transitional release portion of CCUSO and
follow the guideline established by CCUSO.   See Docket No. 30,
Att. No. 2, P. 40-42.   Mr. Curtiss had an opportunity to
object to the release plan and was represented by the Iowa
Public Defender's office.   Docket No. 30, Att. No. 2, p. 44-
45.

On September 5, 2013, the Iowa District Court entered an
Order stating that "the state essentially asks the Court to
approve the [release] plan, while [Mr. Curtiss] opposes the
plan...   the Court concludes that the release plan should be

approved and implemented." Docket No. 30, Att. No. 2, p. 52. Specifically, the Iowa District Court Judge stated "[t]he Department of Human Services through its Civil Commitment Unit for Sex Offenders [CCUSO] is hereby designated as the "agency with jurisdiction" to supervise the [Mr. Curtiss'] release."

Mr. Curtiss appealed that decision to the Iowa Supreme Court, but chose to dismiss his appeal before a decision was issued. See Docket No. 30, Att. No. 2, p. 60.

While this case was proceeding, Mr. Curtiss was moved to the transitional release portion for CCUSO, in compliance with Judge Ruigh's Order. In mid-2013, CCUSO filed a motion to revoke Mr. Curtiss' transitional release, alleging Mr. Curtiss failed to perform basic requirements of transitional release. See Docket No. 60, Att. No. 1, p. 3-6. The Iowa state court provisionally returned Mr. Curtiss to the committed portion of CCUSO and then, after a hearing, determined Mr. Curtiss had violated his release plan. See Docket No. 60, Att. No. 1, p. 15-18. Mr. Curtiss appealed that Order, and his appeal is currently making its way through the Iowa Court of Appeals. See Docket No.'s 67, 69, 74, 75 and 76 for a discussion of Mr. Curtiss' current State Court case.

## III.  ISSUES

In his Motion for a Preliminary Injunction, Mr. Curtiss asks the Court to order the Defendants to comply with Judge Pattinson's original ruling and release Mr. Curtiss with supervision.  The Defendants resist that Motion.  In their Motion for Summary Judgment, the Defendants make numerous arguments, including that Mr. Curtiss' claim is barred by the case of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), Mr. Curtiss' claim is precluded by res judicata, the Defendants are entitled to qualified immunity.

## IV.  STANDARD

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c). A fact is *material* if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." Hutson v. McDonnell Douglas Corp., 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See

<u>Matsushita</u>, 475 U.S. at 587; and <u>Morris v. City of</u> <u>Chillicothe</u>, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing <u>Thomas v. Corwin</u>, 483 F.3d 516, 526-27 (8th Cir. 2007).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395 (8th Cir. 1992) (citing <u>Celotex</u>, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

## V. ANALYSIS

### A. Abstention

In their original Motion to Dismiss, the Defendants argued that the doctrine of abstention applies to preclude this Court from considering Mr. Curtiss' claim. The Court denied the Defendants' argument at that time, stating there were not enough facts in the record to rule. However, in

light of subsequent events, it seems clear that Mr. Curtiss had an ongoing State Court case at the time the Federal case was filed. Accordingly, this case is the type where abstention would generally apply. However, Mr. Curtiss subsequently dismissed his appeal of Judge Ruigh's Order and the underlying State Court case is over. Consequently, the abstention issue is moot.[2]

## B. Preliminary Injunction

As noted above, Mr. Curtiss filed this action after the Iowa District Court stated that he should be released to a transitional facility in Nebraska. Specifically, Mr. Curtiss filed a 42 U.S.C. § 1983 suit arguing that the State was violating his constitutional rights by failing to enforce the State Court Order that he should be released to the facility in Nebraska. Before this Court took up that issue, the Iowa Court vacated its previous Order and authorized Mr. Curtiss to be released pursuant to CCUSO's transitional release policy, which allows CCUSO patients to begin to reenter the community from the CCUSO facility in Cherokee. However, Mr. Curtiss

---

[2] Mr. Curtiss' currently pending State Court appeal, challenging his return to the committed portion of CCUSO, is technically a new, separate case.

continued to prosecute this lawsuit, arguing, generally, that he should be released to a facility of his choosing. (He subsequently amended his argument to request he be released to a facility in Ames, Iowa.) In his Motion for a Preliminary Injunction, he asks this Court to order his release to Ames.

The State sets out the appropriate standard for a preliminary injunction. See Docket No. 20, Att. No. 1, p. 4-11. A district court should consider: (a) threat of irreparable harm to the movant; (b) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (c) the probability that the movant will succeed on the merits; and (d) the public interest. <u>Dataphase Sys., Inc. v. C.L. Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). A preliminary injunction is an extraordinary remedy and burden of establishing the propriety of an injunction is on the movant. <u>Watkins, Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003). Of the factors, success on the merits has been referred to as the most important factor. <u>Roudachevski v. All-American Care Centers, Inc.</u>, 648 F.3d 701, 706 (8th Cir. 2011) (citing <u>Kai v. Ross</u>, 336 F.3d 650, 653 (8th Cir. 2003)).

In this case, those factors weigh in favor of denying a preliminary injunction.  The State complied with Iowa Court Orders at every phase of this case.  Even when it failed to release Mr. Curtiss to Nebraska, it had filed the appropriate application to amend under the Iowa Rules of Civil Procedure.

(The fact that they followed the proper procedure is supported not only by the record but by the fact that the Iowa District Court granted the State's Motion to Amend and vacated its previous Order releasing Mr. Curtiss' to Nebraska.) Accordingly, the only way Mr. Curtiss could ultimately prevail is if this Court concluded that the Iowa Courts have misinterpreted the Iowa statutes or if this Court rules the Iowa statutes are unconstitutional.  Both of those resolutions are unlikely.  Moreover, the public interest and balancing factors both weigh in favor of keeping Mr. Curtiss in the appropriate treatment level or supervised release at CCUSO. As argued by the Defendants:

> Mr. Curtiss's plan to live in Ames is
> insufficiently detailed and insufficient in
> terms of supports.  It puts the public at
> risk.  Dr. Smith offers a declaration in
> support of this contention...  Mr. Curtiss
> does not state where he will live.  When
> other patients have transitioned to the
> community, the agency with jurisdiction

verifies the living arrangement is suitable
(e.g., pedophiles don't get to live next to
daycares).  In order to vet the housing,
Mr. Curtiss must disclose where he intends
to live.  He has not.  Mr. Curtiss states
he has made contacts regarding treatment,
housing, and medical services that he would
need when he moves to Ames.  Affidavit ¶ 6.
He provides no details that could be
verified.  Nor does Mr. Curtiss indicate
that any treatment provider has accepted
him as a client.

Docket No. 31, Att. No. 1, p. 15.  Accordingly, three of the four <u>Dataphase</u> factors weigh heavily in favor denying the preliminary injunction.

Ultimately, Mr. Curtiss repeatedly argues that the Iowa Court has ordered him released.  And, broadly speaking, that is true.  The Iowa Court ordered him released.  But, after the Motion to Enlarge, the Iowa Court vacated the specifics of its previous Order and directed that Mr. Curtiss be released pursuant to a release plan sending him to transitional release at, and supervised by, CCUSO.  To grant Mr. Curtiss final injunctive relief in this case, this Court would have to vacate the Order issued by the Iowa State Court approving the CCUSO transitional release plan, and this Court would have to formulate and substitute its own release plan.  Under I.C.A. 229A, that is a function for the Iowa Courts, not the Federal

Court sitting in a 1983 lawsuit.[3]  Accordingly, Mr. Curtiss'
request for a preliminary injunction is denied.

C.  **Heck v. Humphrey**

In their Motion for Summary Judgment, Defendants argue
that Mr. Curtiss' claim amounts to a habeas challenge, and
that making a habeas challenge is impermissible in a 42 U.S.C.
Section 1983 case.  Mr. Curtiss argues that the Defendants
have violated his rights by failing to release him in
accordance with the Iowa Court Order entered in January 2011.
The Defendants argue that this type of suit is barred by the
ruling in Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck v.
Humphrey, the Supreme Court held that

> when a state prisoner seeks damages in a §
> 1983 suit, the district court must consider
> whether a judgment in favor of the
> plaintiff would necessarily imply the
> invalidity of his conviction or sentence;
> if it would, the complaint must be
> dismissed unless the plaintiff can
> demonstrate that the conviction or sentence
> has already been invalidated.

512 U.S. at 487.

_____

[3]  And, as the Defendants have pointed out, Mr. Curtiss
subsequently had his transitional release revoked by the State
Courts in a separate action.  Accordingly, to grant relief,
this Court would have to vacate two distinct separate State
Court cases, one of which is still ongoing.

Even when a plaintiff demands only money damages, he cannot bring a non-habeas civil action that would call into question the lawfulness of his detention. <u>Sheldon v. Hundley</u>, 83 F.3d 231, 233 (8th Cir. 1996).

The distinction between the present case and <u>Heck</u> is that the later involved a criminal conviction, while the present case involves a civil commitment. However, as noted by the Defendants, several Courts have extended the <u>Heck</u> doctrine to civil commitments, including the civil commitments of sexually violent predators. See <u>Huftile v. Miccio-Fonseca</u>, 410 F.3d 1136, 1139-40 (9th Cir. 2005) (holding that <u>Heck</u> applies to civilly committed detainees who are confined under California's "Sexually Violent Predators Act"), cert. denied, 547 U.S. 1166 (2006). Accordingly, the Court must consider the <u>Heck</u> ruling as applied to this case.

The principal question under <u>Heck</u> is whether a judgment in favor of the Plaintiff would necessarily imply the invalidity of the Plaintiff's confinement. If it does, the Complaint must be dismissed unless the Plaintiff can demonstrate that the confinement has already been invalidated. In their brief, the Defendants argue:

18

> [a] state detainee may not challenge the
> legality of his confinement in a federal
> civil rights action. Even when a plaintiff
> demands only money damages, he cannot bring
> a nonhabeas civil action that would call
> into question the lawfulness of his
> detention. <u>Sheldon v. Hundley</u>, 83 F.3d
> 231, 233 (8th Cir. 1996) (<u>Heck</u> requires
> termination of the prior state court
> action). The relief Curtiss seeks is
> precisely what Heck sought to prevent.
> "<u>Heck's</u> favorable termination rule was
> intended to prevent a person in custody
> from using § 1983 to circumvent the more
> stringent requirements for habeas corpus."
> <u>Huftile v. Miccio-Fonseca</u>, 410 F.3d 1136,
> 1139 (9th Cir. 2005). Mr. Curtiss
> complains that his confinement is unlawful.
> This is a habeas claim. It is not suited
> for § 1983 relief.

Docket No.31, Att. No. 1, p. 6-7.

In light of the case history set out above, it is clear that the Defendants are correct. On January 17, 2011, Judge Pattinson stated that Mr. Curtiss should be conditionally released to the Nebraska facility. The State of Iowa filed the appropriate and legal motion to have the State Court reconsider its decision. The State of Iowa pointed out specific language in the statute that said a release to Nebraska would be illegal. The Iowa District Court agreed, and Judge Ruigh vacated parts of the previous Order and ordered that Mr. Curtiss should begin transitional release at

CCUSO. Mr. Curtiss sought to appeal that Order, but then abandoned his appeal. The issue before the Court in this case is <u>not</u> whether I.C.A. Section 229A is unconstitutional as applied or whether the treatment regime at CCUSO violates constitutional standards. The issue is specific to Mr. Curtiss' case and history. Mr. Curtiss asks this Court to look at Judge Ruigh's Order, overrule it, and allow Mr. Curtiss to be released to Ames. That is a habeas request, not a 42 U.S.C. Section 1983 request. For this Court to grant Mr. Curtiss relief, it would have to invalidate Mr. Curtiss' confinement. This is exactly what <u>Heck</u> prohibits. Accordingly, the Defendants' Motion for Summary Judgment must be granted.

### D. Qualified Immunity

The Defendants also argue they are entitled to a defense of qualified immunity. As government officials, the CCUSO Defendants argue that they are entitled to qualified immunity for the performance of discretionary functions. <u>Davis v. Hall</u>, 375 F.3d 703, 711 (8th Cir. 2004). Qualified immunity exists "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective

government.'" <u>Anderson v. Creighton</u>, 483 U.S. 635, 646 (1987) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817 (1982)).

To defeat the Defendants' claim of qualified immunity, the Plaintiff must show how each Defendant's individual conduct violated a "clearly established statutory or constitutional right of which a reasonable person would have known." <u>Id.</u> The Supreme Court has established a two step sequential evaluation process to resolve questions of qualified immunity.[4] <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The "'threshold question'" is whether the facts, taken in a "'light most favorable to the party asserting the injury,'" demonstrate the defendant's "'conduct violated a constitutional right'" of the plaintiff. <u>Scott v. Harris</u>, 550 U.S. 372, 377 (2007). If there is a "violation of constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" <u>Id.</u>

---

[4] More recently, in <u>Pearson v. Callahan</u>, the Supreme Court ruled that the sequential evaluation process outlined in <u>Saucier</u> was not mandatory; lower courts retain discretion whether to follow the <u>Saucier</u> procedure. 555 U.S. 223, 236 (2009).

The first question in the sequential evaluation process is straight forward and merely asks if there is a constitutional violation under prevailing law. The second question in the sequential evaluation process requires that the "contours of the right . . . be sufficiently clear" such "that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202. "If the law did not put the [official] on notice that his conduct would be clearly unlawful," a motion to dismiss "based on qualified immunity is appropriate." Id. While the first and second steps are quite similar, the second step adds an additional dimension in that "reasonable mistakes can be made as to the legal constraints on particular" official conduct, regardless of whether or not there was an actual constitutional violation. Id., at 205.

In this case, the Defendants were complying with a specific State Court Order. Thus, even if keeping Mr. Curtiss in CCUSO's transitional release program violated a constitutional right, the Defendants were not on notice that their activity violated a constitutional right. Accordingly, the Defendants are entitled to qualified immunity.

**E.  Other Issues**

In their Motion for Summary Judgment, the Defendants raise several other issues related to personal responsibility, res judicata, and monetary damages.  Because the Court is dismissing Mr. Curtiss' claim on the merits, the Court need not reach these issues.

**VI.  ORDER**

For the reasons set out above, the Plaintiff's Motion for a Preliminary Injunction, Docket No. 29, is **DENIED** and the Defendants' Motion for Summary Judgment, Docket No. 31, is **GRANTED**.  Accordingly, Mr. Curtiss' case will be dismissed. Finally, the Court's previous Order that the parties file bi-monthly status reports is **VACATED** and terminated.

**IT IS SO ORDERED** this 19th day of February, 2015.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

23